# Ex parte FISK.

## ORIGINAL.

Argued January 6, 1885.—Decided March 2, 1885.

The principle that in actions at law the laws of the States shall be regarded as rules of decision in the courts of the United States, § 721 Rev. Stat., and that the practice, pleadings, and forms and modes of proceedings in such cases shall conform as near as may be to those of the courts of the States in which the courts sit, § 914, is applicable only where there is no rule on the same subject prescribed by act of Congress, and where the State rule is not in conflict with any such law.

The statute of New York, which permits a party to a suit to be examined by his adversary as a witness at any time previous to the trial in an action at law, is in conflict with the provision of the Revised Statutes of the United States which enacts that "The mode of proof in the trial of actions at common law shall be by oral testimony and examination of witnesses in open court, except as hereinafter provided." § 861.

None of the exceptions afterwards found in §§ 863, 866 and 867 provide for such examination of a party to the suit in advance of the trial as the statute of New York permits.

The courts of the United States sitting in New York have no power, therefore,
    to compel a party to submit to such an examination, and no power to punish
    him for a refusal to do so.
Nor can the United States court enforce such an order made by a State court
    before the removal of the case into the Circuit Court of the United States.
Where a person is in custody, under an order of the Circuit Court, for contempt
    in refusing to answer under such an order, this court will release him by
    writ of habeas corpus on the ground that the order of imprisonment was
    without the jurisdiction of that court.

This was an application on the part of Clinton B. Fisk for a
writ of habeas corpus, to be directed to the marshal of the
Southern District of New York, in whose custody the petitioner
was held under an order of the Circuit Court for that district.

The history of the case which resulted in this order, so
far as it is necessary to the decision of the matter, may be
briefly stated as follows:

Francis B. Fogg brought suit in the Supreme Court of the
State of New York against Fisk to recover the sum of $63,250,
on the allegation of false and fraudulent representations made
by Fisk in the sale of certain mining stocks.

In the progress of the suit, and before the trial, the plaintiff
obtained from the court the following order:

" Ordered, that the defendant, Clinton B. Fisk, be examined
and his testimony and deposition taken as a party before trial,
pursuant to sections 870, 871, 872, 873, &c., of the Code of
Civil Procedure, and that for such purpose he personally be
and attend before the undersigned, a justice of this court, at
the chambers thereof, to be held in the new county court-house,
in the said city of New York, on the 31st day of January,
1883, at 11 o'clock in the forenoon of that day." A motion
to vacate this order was overruled and the judgment finally
affirmed by the Court of Appeals.

Thereupon the defendant appeared before the court and sub-
mitted to a partial examination, answering some questions and
objecting to others, until, pending one of the adjournments of
the examination, he procured an order removing the case to
the Circuit Court of the United States.

In that court an order was made to continue the examination
before a master, to whom the matter was referred. The de-

fendant refusing to be sworn and declining to be examined, he was brought before the Circuit Court on an application for attachment for a contempt in refusing to obey the order.

Without disposing of this motion, the Circuit Court made another order, to wit:

"It is hereby ordered and adjudged that the motion to punish the said defendant for such contempt stand adjourned to the next motion day of this court, to wit, on the 28th day of March, 1884.

"It is further ordered, that the defendant, Clinton B. Fisk, be and he is hereby directed and required to attend personally on the 14th day of March, 1884, before the Honorable Addison Brown, one of the judges of this court, at a stated term thereof, at his chambers in the post-office building, in said city of New York, at eleven o'clock in the forenoon of that day; then and there, and on such other days as may be designated, to be examined and his testimony and deposition taken and continued as a party before trial, pursuant to section 870 *et seq.*, of the Code of Civil Procedure, and for the purposes mentioned in said order of January 12, 1883, and February 12, 1884, heretofore made in this action."

The defendant appeared before the court in pursuance of this order, and, stating that he was advised by counsel that the court had no jurisdiction to require him to answer in this manner to the questions propounded to him by the counsel for plaintiff, he refused to do so.

For this, on further proceeding, he was held by the court to be in contempt, and fined $500, and committed to the custody of the marshal until it was paid.

It was to be relieved of this imprisonment that he prayed here the writ of habeas corpus.

*Mr. Wheeler H. Peckham* for petitioner.

*Mr. John R. Dos Passos* opposing.—I. A writ of habeas corpus cannot be issued to review the proceedings of the Circuit Court. That court had jurisdiction over the person and subject matter, and had power to punish for contempt. Rev.

Stat. § 725. When a court commits a party for contempt, the adjudication is a conviction, and the commitment, in consequence, is execution. *Ex parte Kearney*, 7 Wheat. 38. This court can take cognizance of such a case only upon a certificate of division of opinion. *New Orleans v. Steamship Co.*, 20 Wall. 387; *Hayes v. Fischer*, 102 U. S. 121. See also *Williamson's Case*, 26 Penn. St. 924. If the Circuit Court had refused the motion to compel defendant to submit to examination, no writ of error or appeal would lie. The writ now applied for, if granted, will be an exercise of appellate jurisdiction from an interlocutory decree of a Circuit Court. The proceeding to examine the petitioner is a right given by the New York Code. If, when taken, the deposition is offered in evidence, then objections can be made and exceptions taken, and the question can be examined on writ of error, Rev. Stat. § 691; *Sawin v. Kenny*, 93 U. S. 289, or it may be raised upon a certificate of division. On petition for habeas corpus a court will not review questions which can be properly heard on appeal or by writ of error. *Hayes v. Fischer*, 102 U. S. 121. The only case in which this court has reviewed, by writ of habeas corpus, proceedings of the Circuit Court committing a party for contempt, is *Ex parte Rowland*, 104 U. S. 604. The court placed its decision upon *Ex parte Lange*, 18 Wall. 163; *Ex parte Parks*, 93 U. S. 18; *Ex parte Virginia*, 100 U. S. 339; and *Ex parte Siebold*, 100 U. S. 371. None of these were commitments for contempt. In the first in was held that the court was *functus officio* when it undertook to impose sentence on the petitioner; in the second, the court refused the writ because the court in which the indictment was pending had jurisdiction to determine whether the act charged in the indictment was a crime; and in the third and fourth the court denied the writ on the ground that the act complained of was constitutional. In this case the petitioner deliberately put himself in contempt, in order to raise the question of the power of the court to commit for it. —II. The Circuit Court had jurisdiction to make the order in question, requiring defendant to submit to an examination as a party before trial. This power can be upheld under two distinct statutes: 1st, the act of June, 1872, § 914 Rev. Stat.,

which provides that "the practice, pleadings, and forms and modes of proceeding in civil causes, other than equity and admiralty causes, in the Circuit and District Courts, shall conform, as near as may be, to the practice, pleadings and forms and modes of proceeding existing at the time in like causes in the courts of record of the State within which such Circuit or District Courts are held, any rule of court to the contrary notwithstanding;" or 2d, under the act of March 3, 1875, § 4, 18 Stat. 471, which provides, "that when any suit shall be removed from a State court to the Circuit Court of the United States. . . . all injunctions, orders and other proceedings had in such suit prior to its removal shall remain in full force and effect until dissolved or modified by the court to which such suit shall be removed." The examination of a party under the Code of New York, either for the purpose of enabling a party to frame a complaint, *Kenney* v. *Stedwell*, 64 N. Y. 120, or for the prosecution or defence of the action, *Fogg* v. *Fisk*, 93 N. Y. 562, is a substitute for the old Chancery bill of discovery. The evidence so taken may or may not be used on the trial. The practice is in no wise in conflict with the statutes of the United States. The object of § 861 Rev. Stat. is to provide a mode of proof on the trial of an action; but it does not refer to this proceeding, in the nature of discovery, conducted in accordance with the practice prevailing in New York. See Mr. Justice Miller's opinion in *Flint* v. *Crawford County*, 5 Dillon, 481. The act of March 3, 1875, § 4, provides that all orders made in the suit prior to removal shall stand. The order to take the petitioner's testimony was made before removal. This order is by the act made to stand, and even if the evidence cannot be used on the trial of this action, as a deposition, it can be used in other suits; and even in this it can be used as a declaration of the party. The transfer of a suit from a State court does not vacate what has been done there. The Circuit Court takes it up where the State court left it. *Duncan* v. *Gegan*, 101 U. S. 810; *Akerly* v. *Vilas*, 3 Bissell, 332; *Williams Mower Co.* v. *Raynor*, 7 Bissell, 245; *Bills* v. *New Orleans, St. Louis & Chicago Railroad Co.*, 13 Blatchford, 227; *Werthein* v. *Continental Railway & Trust Co.*, 20 Blatch-

ford, 508; *Harrison Wire Co.* v. *Wheeler*, 11 Fed. Rep. 206; *Sonstiby* v. *Keeley*, 11 Fed. Rep. 578. We do not know an instance where a case has been removed from a State to a federal court, in which orders made previous to its removal have not been carried out and maintained.

Mr. JUSTICE MILLER delivered the opinion of the court. He stated the facts as above recited, and continued:

The jurisdiction of this court is always challenged in cases of this general character, and often successfully. There can be no doubt of the proposition, that the exercise of the power of punishment for contempt of their orders, by courts of general jurisdiction, is not subject to review by writ of error, or appeal to this court. Nor is there, in the system of federal jurisprudence, any relief against such orders, when the court has authority to make them, except through the court making the order, or possibly by the exercise of the pardoning power.

This principle has been uniformly held to be necessary to the protection of the court from insults and oppressions while in the ordinary exercise of its duties, and to enable it to enforce its judgments, and orders necessary to the due administration of law, and the protection of the rights of suitors.

When, however, a court of the United States undertakes, by its process of contempt, to punish a man for refusing to comply with an order which that court had no authority to make, the order itself, being without jurisdiction, is void, and the order punishing for the contempt is equally void. It is well settled now, in the jurisprudence of this court, that when the proceeding for contempt in such a case results in imprisonment, this court will, by its writ of habeas corpus, discharge the prisoner. It follows, necessarily, that on a suggestion by the prisoner, that, for the reason mentioned, the order under which he is held is void, this court will, in the language of the statute, make "inquiry into the cause of the restraint of liberty." § 752 Rev. Stat.

That the case as made by the petitioner comes, for the purposes of this inquiry, within the jurisdiction of this court, under the principles above mentioned is established by the analogous

cases: *Ex parte Rowland*, 104 U. S. 604; *Ex parte Lange*, 18 Wall. 163.

But did the court transcend its jurisdiction in fining the petitioner for contempt? Or rather, did it have the power to make the order requiring him to submit to the preliminary examination? For, if it had that power, it clearly could enforce obedience to the order by fine and imprisonment, if necessary. The record of the entire proceeding in this branch of the case, both in the State court and the Circuit Court, is before us, and we are thus enabled to form an intelligent opinion on the question presented.

The power of the court to continue the examination of the defendant, after the removal of the case into the court of the United States, is asserted on two grounds:

1. That the order for his examination, having been made by the Supreme Court of New York, under its rightful jurisdiction, while the case was pending in it, is still a valid order partially executed, which accompanies the case into the Circuit Court; and that in that court it cannot be reconsidered, but must be enforced.

2. That if this be not a sound proposition, the Circuit Court made an independent order of its own for the examination of the defendant, which order is justified by the principle that the Code of Civil Procedure of New York, under which both orders were made, is a part of the law governing the courts of the United States sitting within that State.

We will inquire into the latter proposition first, for the points to be considered in it lie at the foundation of the other also.

The general doctrine that remedies, whose foundations are statutes of the State, are binding upon the courts of the United States within its limits, is undoubted. This well-known rule of the federal courts, founded on the act of 1789, 1 Stat. 92; Rev. Stat. § 721, that the laws of the several States, except when the Constitution, treaties, or statutes of the United States otherwise require or provide, shall be regarded as rules of decision in trials at common law, was enlarged in 1872 by the provision found in § 914 of the Revision. This enacts that " the practice, pleadings, and forms and modes of proceeding in civil

causes, other than equity and admiralty causes, in the circuit and district courts, shall conform, as near as may be, to the practice, pleadings and forms and modes of proceeding existing at the time in like causes in the courts of record of the State within which such circuit or district courts are held, anything in the rules of court to the contrary notwithstanding."

In addition to this, it has been often decided in this court that in actions at law in the courts of the United States, the rules of evidence and the law of evidence generally of the States prevail in those courts.

The matter in question here occurred in the court below in regard to a common-law action. It was in regard to a method of procuring and using evidence, and it was a proceeding in a civil cause other than equity or admiralty.

We entertain no doubt of the decision of the Court of Appeals of New York, that it was a proceeding authorized by the statutes of New York, under which, in a New York court, defendant was bound to answer.

The case, as thus stated, is a strong one for the enforcement of this law in the courts of the United States. *Ex parte Boyd*, 105 U. S. 647.

But the act of 1789, which made the laws of the States rules of decision, made an exception when it was " otherwise provided by the Constitution, treaties, or statutes of the United States."

The act of 1872 evidently contemplates the same exception by requiring the courts to conform to State practice *as near as may be*. No doubt it would be implied, as to any act of Congress adopting State practice in general terms, that it should not be inconsistent with any express statute of the United States on the same subject.

There are numerous acts of Congress prescribing modes of procedure in the Circuit and District Courts of the United States at variance with laws of the States in which the courts are held. Among these are the modes of empanelling jurors, their qualifications, the number of challenges allowed to each party. Two chapters of the Revised Statutes, XVII. and XVIII., embracing §§ 858 to 1042, inclusive, are devoted to the subjects of evidence and procedure alone.

The case before us is eminently one of evidence and procedure. The object of the orders is to procure evidence to be used on the trial of the case, and this object is effected by a proceeding peculiar to the courts of New York, resting alone on a statute of that State. There can be no doubt that if the proceeding here authorized is in conflict with any law of the United States, it is of no force in the courts of the United States. We think it may be added further in the same direction, that if Congress has legislated on this subject and prescribed a definite rule for the government of its own courts, it is to that extent exclusive of any legislation of the States in the same matter.

A striking illustration of this effect of an act of Congress in prescribing rules of evidence is to be found in § 858 of the Revised Statutes, originally enacted in an appropriation bill in 1864, and the amendment to it passed in 1865.

It now reads: "In the courts of the United States no witness shall be excluded in any action on account of color, or in any civil action because he is a party to or interested in the issue tried: *Provided,* That in actions by or against executors, administrators, or guardians, in which judgment may be rendered for or against them, neither party shall be allowed to testify against the other, as to any transaction with, or statement by, the testator, intestate, or ward, unless called to testify thereto by the opposite party, or required to testify thereto by the court."

This act of Congress, when passed, made competent witnesses in the courts of the United States many millions of colored persons who were not competent by the laws of the States in which they lived, and probably as many more persons, as *parties* to suits, or interested in the issues to be tried, who were excluded by the laws of the States. It has never been doubted that this statute is valid in all the courts of the United States, not only as to the introduction of persons of color and parties to suits; but, in the qualification made by the proviso where its language differs from provisions somewhat similar in State statutes, the act of Congress, critically construed, has always been held to govern the court. *Monongahela Bank* v.

*Jacobus,* 109 U. S. 275; *Potter* v. *The Bank,* 102 U. S. 163; *Page* v. *Burnstine,* 102 U. S. 664; *King* v. *Worthington,* 104 U. S. 44.

Coming to consider whether Congress has enacted any laws bearing on the question before us, we find the following sections of the Revised Statutes, in chapter XVII., on evidence, which we here group together:

"SEC. 861. The mode of proof, in the trial of actions at common law, shall be by oral testimony and examination of witnesses in open court, except as hereinafter provided."

"SEC. 863. The testimony of any witness may be taken in any civil cause depending in a district or circuit court, by deposition *de bene esse,* when the witness lives at a greater distance from the place of trial than one hundred miles, or is bound on a voyage to sea, or is about to go out of the United States, or out of the district in which the case is to be tried, and to a greater distance than one hundred miles from the place of trial, before the time of trial, or when he is ancient or infirm." The remainder of this section, and §§ 864 and 865, are directory as to the officer before whom the deposition may be taken, the notice to the opposite party, and the manner of taking, testifying and returning the deposition to the court.

"SEC. 866. In any case where it is necessary, in order to prevent a failure or delay of justice, any of the courts of the United States may grant a dedimus potestatem to take depositions according to common usage; and any circuit court, upon application to it as a court of equity, may, according to the usages of chancery, direct depositions to be taken *in perpetuam rei memoriam,* if they r ate to any matters that may be cognizable in any court of the United States."

§ 867 authorizes the courts of the United States, in their discretion, and according to the practice in the State courts, to admit evidence so taken; and §§ 868, 869 and 870 prescribe the manner of taking such depositions, and of the use of the *subpœna duces tecum,* and how it may be obtained.

No one can examine these provisions for procuring testimony to be used in the courts of the United States and have any reasonable doubt that, so far as they apply, they were intended

to provide a system to govern the practice, in that respect, in those courts. They are, in the first place, too complete, too far-reaching, and too minute to admit of any other conclusion. But we have not only this inference from the character of the legislation, but it is enforced by the express language of the law in providing a defined mode of proof in those courts, and in specifying the only exceptions to that mode which shall be admitted.

This mode is "by oral testimony and examination of witnesses in open court, except as hereinafter provided."

Of course the mode of producing testimony under the New York Code, which was applied to petitioner, is not oral testimony and examination of a witness in open court, within the meaning of this act of Congress. This obviously means the production of the witness before the court at the time of the trial, and his *oral* examination then; and it does not mean proof by reading depositions, though those depositions may have been taken before a judge of the court, or even in open court, at some other time than during the trial. They would not, in such case, be oral testimony. The exceptions to this section, which all relate to depositions, also show that proof by deposition cannot be within the rule, but belongs exclusively to the exceptions.

We come now to inquire if the testimony sought to be obtained from petitioner by this mode comes within the exception referred to in § 861. These exceptions relate to cases where it is admissible to take depositions *de bene esse* under § 863, or *in perpetuam rei memoriam* and *under a dedimus potestatem* under § 866.

In the first of these, the circumstances which authorize depositions to be taken in advance for use on the trial are mentioned with great particularity. They all have relation to conditions of the witness; to residence more than a hundred miles from the court, or bound on a sea voyage, or as going out of the United States or out of the district, or more than a hundred miles from the place of trial before the time of trial, or an ancient or infirm witness.

None of these things are suggested in regard to petitioner,

nor were they thought of as a foundation of the order of the State court or of the Circuit Court. The statute of New York, under which both courts acted, makes no such requirements as a condition to the examination of the party. It is a right which, if the judge may possibly refuse to grant, he is in that matter governed by none of the conditions on which the deposition may be taken under the act of Congress.

Nor does the case come within the principle or profess to be grounded on the power conferred by § 866, which is another exception to the rule established by § 861. It is not according to common usage to call a party in advance of the trial at law, and subject him to all the skill of opposing counsel to extract something which he may then use or not, as it suits his purpose. This is a very *special* usage, dependent wholly upon the New York statute.

Nor is it in any manner made to appear that this examination "was necessary in order to prevent a delay or failure of justice in any of the courts of the United States," nor is any such proposition the foundation of the court's action.

These are the exceptions which the statute provides to its positive rule that the mode of trial in actions at law shall be by oral testimony and examination of witnesses in open court. They are the only exceptions thereinafter provided. Does the rule admit of others? Can its language be so construed?

On the contrary, its purpose is clear to provide a mode of proof in trials at law to the exclusion of all other modes of proof; and because the rigidity of the rule may, in some cases, work a hardship, it makes exceptions of such cases as it recognizes to be entitled to another rule, and it provides that rule for those cases. Under one or the other all cases must come. Every action at law in a court of the United States must be governed by the rule, or by the exceptions which the statute provides. There is no place for exceptions made by State statutes. The court is not at liberty to adopt them, or to require a party to conform to them. It has no power to subject a party to such an examination as this. Not only is no such power conferred, but it is prohibited by the plain language and the equally plain purpose of the acts of Congress, and espe-

cially the chapter on Evidence of the Revision. The New York statute would, if in force, repeal or supersede the act of Congress.

It does not require much deliberation to see, that if the acts of Congress forbid the use of this kind of testimony in the courts of the United States, no order for taking it made in the State court while the case was pending in that court, with a view to its use on a trial there, can change the law of evidence in the Federal court. Without deciding now, for the question is not before us, whether the testimony actually given under that order and transmitted with the record of the case to the Circuit Court, can be used when the trial takes place, we are well satisfied that the latter court cannot enforce the unexecuted order of the State court to procure evidence which, by the act of Congress, is forbidden to be introduced on the trial, if it should be so taken.

The provision of § 4 of the act of March 3, 1875, 18 Stat. 470, declares orders of the State court, in a case afterwards removed, to be in force until dissolved or modified by the Circuit Court. This fully recognizes the power of the latter court over such orders. And it was not intended to enact that an order made in the State court, which affected or might affect the mode of trial yet to be had, could change or modify the express directions of an act of Congress on that subject.

Nor does the language of the court in *Duncan* v. *Gegan*, 101 U. S. 810, go so far. When it is there said that "the Circuit Court has no more power over what was done before the removal than the State court would have had if the suit had remained," it is in effect affirmed that it has at least that much power. There can be no doubt that on a proper showing before the State court it could have discharged the order for this examination or suspended its further execution. In acting on such a motion as this it would have been governed by the laws of the State of New York. In deciding whether it would continue the execution of this order or decline to execute it further, the Circuit Court was governed by the federal law. If the law governing the Circuit Court gave it no power to make or continue this examination, but in fact forbade it, then it could not enforce the order.

The petitioner having removed his case into the Circuit Court has a right to have its further progress governed by the law of the latter court, and not by that of the court from which it was removed; and if one of the advantages of this removal was an escape from this examination, he has a right to that benefit if his case was rightfully removed.

This precise point is decided, and in regard to this very question of the differing rules of evidence prevailing in the State and Federal courts, in *King* v. *Worthington*, 104 U. S. 44.

In that case, after it had been once heard on appeal in the Supreme Court of Illinois, it was removed into the Circuit Court of the United States.

The Supreme Court had reversed the judgment of the inferior court, because, among other things, the evidence of witnesses had been received whom that court held to be incompetent.

On the trial in the Circuit Court they were held to be competent and admitted to testify, notwithstanding the decision of the Supreme Court of the State, on the ground that § 858 of the Revised Statutes of the United States, already copied in this opinion, made them competent, and, although it differed in that respect from the statute of Illinois on the same subject, it must prevail in the Circuit Court.

It was strongly urged here that this was error, and as to that case the decision of the Illinois court, made while it was rightfully before it, should control. But this court held otherwise, and said: " The Federal Court was bound to deal with the case according to the rules of practice and evidence prescribed by the acts of Congress. If the case is properly removed the party removing it is entitled to any advantage which the practice and jurisprudence of the Federal Court give him."

The Circuit Court was, therefore, without authority to make the orders for the examination of petitioner in this case, and equally without authority to enforce these orders by process for contempt. Its order fining him for contempt and committing him to the custody of the marshal was without jurisdiction and void, and the prisoner is entitled to his release.

It is supposed that the announcement of the judgment of the court that he is entitled to the writ will render its issue unnecessary. If it shall prove otherwise,

*The writ will be issued on application to the clerk.*